Primm v. Andrew M. Saul May it please the court, your honors. My name is Sean Good and I represent Mr. Charles Primm. Inexplicably and improperly, the district court articulated and applied an overly deferential standard of review, which essentially put it in the position to rubber stamp this deficient ALJ's decision. The district court misunderstood Mr. Primm's objections. He never asserted the ALJ is required to accept the findings of the workers' comp arbitration and other non-medical and medical treating providers, but according to SSR 06-3P, he must at least consider them. It is on these points I would like to at least highlight a small handful of errors unless you have questions at this time. Again, Mr. Primm never asserted that the ALJ is required to accept the findings of the workers' comp determination. However, he must at least consider it. The ALJ's failure to consider this determination that's in the record is a reversible error in itself. The ALJ did not even mention this determination. What's interesting about the arbitration decision is how they weigh the doctor's opinions. The ALJ's weighting of the doctor's opinions and the workers' comp arbitrator's weighting of the opinions are in complete contradiction, and again, this warrants at least minimal analysis at the very least. The workers' comp decision can be found in the record at page 195, and the workers' comp arbitrator found Dr. Spencer did not review the records. Dr. Spencer even wrote in his report that he did not review the records, and as you can see from the arbitrator's decision, his focus was on the causation issue with regard to the cervical spine injuries. At 351, he admits that he didn't review these records, and therefore the arbitrator did not give his opinion much weight. In addition, Dr. Spencer makes false statements about Dr. Montella's opinions. Dr. Spencer claims he did not feel that there was anything wrong with Mr. Prim's cervical spine and did not have any recommendations. That's in the record at 203. The arbitrator found this to be completely false, and Montella and Lopez were given the most probative weight, according to the arbitrator. Again, this is why the workers' comp decision warranted at least being mentioned. The ALJ also improperly weighed the treating physician's opinion. Starting with Montella, Mr. Prim's cervical spine expert, Mr. Prim was referred to Dr. Montella by Dr. Lopez's partner at Midwest Sports Medicine. Dr. Lopez treated Mr. Prim's arm and shoulder. That's noted at 308 and 309, and Dr. Lopez said he would follow him closely, his treatment with his partner. According to the workers' comp decision not mentioned by the ALJ, Lopez referred him to Montella for the radiating pain with bouts of numbness and tingling. That's at page 196. Later that month, Dr. Montella noted Prim's neck symptoms were ongoing, severe, and debilitating, and that it was unreasonable for him to participate in work in any way. Montella ordered an EMG, which showed cervical radiculopathy. He ordered an MRI, which showed multilevel degenerative disc changes and more prominent abnormalities in the mid-cervical spine. In addition, he was sent to an independent medical examiner to Dr. Nikhil Verma, who also, even before the MRI was conducted, or just after, excuse me, agreed that there was radiculopathy. He also sent him for physical therapy, chiropractic care, and prescribed anti-inflammatories and a Meddral dose pack. None of this treatment was mentioned by the administrative law judge. A non-treating medical provider, non-medical provider was not considered as well, whose notes are very important, and that's Carrie Staffseth. Staffseth, excuse me. She's a certified rehabilitation counselor. She administered Mr. Prim what's called the Purdue pegboard battery. This is a wood board, and essentially you take metal dowels and you insert them in the holes, and they time you and they basically put you on a bell curve of how you perform against other people in the industrial economy. Mr. Prim performed in the eighth percentile with his non-dominant left hand, and his right hand couldn't be used for it. So, again, this is something that's really important that was not discussed by the LLJ, and it wasn't noted that for any reason that he was faking it or that he didn't give full effort. He just couldn't do it, and also consistent with this is the functional capacity evaluation, which also says nothing about him not giving effort or doing what he's told or that he's faking it. The FCE at page 363 concluded that he cannot use his right hand for simple grasping, pushing, pulling, or fine manipulation. The ALJ during the hearing recognized this. He gives three hypotheticals, and the third one he gives to the vocational expert Brian Harmon and says, assume you have an individual who essentially can't use their right hand in any meaningful way. Is there any jobs for this individual? The vocational expert answered no, and this was conveniently left out of the decision and the analysis. The third doctor who is relied upon more than the others is Dr. Lopez. Dr. Lopez was the one who, the first orthopedic that saw Mr. Prim after the work-related injury. He performed the right shoulder rotator cuff repair in October of 2016 and the complete reconstruction of that joint as well. In May of 2007, he did a right cubital tunnel release with an ulnar nerve transposition, and on August 14th of 2006, in regard to Mr. Prim returning to work, his notes say that once he finishes up his work-hardening program, we will hopefully get him back to work if Dr. Montella is okay with that. Now, Dr. Montella is the cervical spine expert who treated Mr. Prim, who also works with him. Dr. Montella does not release him back to work. There's a medical source statement at 455, which makes that very clear. And if you don't have any questions, I'd like to reserve the rest of the time for rebuttal. Thank you. May it please the Court. Lou Han on behalf of the Commissioner of Social Security. To begin with where opposing counsel began with the Illinois workers' compensation decision. It's alleged that the ALJ never discussed this, but here at page 18 of the transcript, AR18, the ALJ cites exactly that decision, which is Exhibit 8D in the record. The ALJ got the information from that decision in the form of a $300,000 lump sum in workers' compensation that Mr. Prim received and an over $300 a week payment from his former employer, United Airlines. Essentially, what this panel heard today was Mr. Prim's attorney arguing for this court to weigh the factual evidence differently than how the ALJ did. But that's not the standard. This panel would have to find that what the ALJ did with the facts was unreasonable. So starting with the Illinois workers' compensation decision, looking at that decision from June 2011, excuse me, that decision was to determine whether the injuries that Mr. Prim sustained in May 2006 led to his neck and right arm problems. And it's with that in mind that the Illinois arbitrator said, Dr. Spencer, who was of the opinion that his neck injuries were not a result of his work injury, was not to be credited insofar as the decision said those injuries were the result of Mr. Prim lifting a heavy suitcase in the course of his job back in 2006. Looking at the Illinois arbitration decision, even the outcome itself says that there are other jobs that Mr. Prim could do. The arbitration decision is not applying the five-step sequential process that this agency applies to determine disability. And it's telling that the amount allocated to him per week is the difference between what he was making at United Airlines and what he theoretically would be making at these other jobs. His prior job was a heavy job. He lifted heavy suitcases. And he can't go back to that work. A lot of the medical record from 2006 through about 2011 was all with that in mind. And turning to the other opinion that opposing counsel points to, a much later opinion, this opinion came a few months after the hearing in this case. And this was the attorney-supplied residual functional capacity questionnaire that Dr. Bruce Montella filled out. And in that case, Dr. Montella did opine to disabling kinds of limitations. But the ALJ gave five different reasons for why he didn't credit that opinion. Instead, what the ALJ did in assessing Mr. Prim's RFC was credit five separate opinions from another treating source. And this is another doctor at Midwest Sports Medicine. That doctor was Dr. Eugene Lopez. And between November 2007 and April 2014, Dr. Lopez said on no less than five occasions, light duty. On four of the later times. Would that include, given the situation, light duty? He's off of the heavy lifting, obviously. And you say there was a $300,000 settlement. Is that right? That's right, Your Honor. And now he gets, does he get periodic payments still of a certain amount? I believe so, Your Honor. That part is part of an arbitration decision for workers' comp that's not really in this record other than that Exhibit 8D. And it sounds as though there is a $300,000 plus payment per week from United Airlines. Okay. All right. Go ahead. And it's Dr. Lopez who later, between 2008 and 2015, say that it's light duty with no push or pulling, no overhead work, 15 pounds occasionally, 10 pounds frequently. Those are precisely the kinds of limitations that the ALJ included in his RFC finding. We have a case here where an ALJ is essentially crediting a treating source opinion. That's not usually why we're here. Usually we have a case where it's being argued that the ALJ discounted all of the treating source opinions, which would be disabling. And here there was one. It was submitted much later after the hearing in October 2016, and that was the only treating source opinion, one from Dr. Montella versus the five from Dr. Lopez. There's also this non-medical opinion, which was from March 2011, again during this period of time where the workers' compensation was being litigated, and that was the vocational counselor, Carrie Staffseth. But even if this panel looks at that opinion from Ms. Staffseth, which on AR-19 the ALJ discusses and explains why he didn't credit, even that opinion from Ms. Staffseth says Mr. Prim could transfer to other work. Again, at that time it was all about what else Mr. Prim could do because he clearly couldn't do the job that he held from 1987 through 2006 at United. But later on, again, Dr. Lopez, throughout many, many years and over the course of about nine years, Dr. Lopez is very consistent in saying that Mr. Prim can do light work with some additional limitations. It's that RFC that the ALJ presents to the vocational expert. Opposing counsel points to some other questions that in these hearings, ALJs often ask vocational experts additional limitations, ones that are not found in the RFC, and in that case with many more limitations, perhaps a hypothetical individual would be disabled. But with the limitations that Mr. Prim has, there are a significant number of jobs that he could still do. And even as the ALJ discussed in his decision, with further limitations of occasional reaching in all directions except none overhead, and even some limitation on fine and gross manipulation, there are still jobs that the vocational expert identified, and those other two jobs would be the usher and mail clerk job. And the first jobs in the hypothetical that matched the RFC were the jobs of sales attendant and inspector. What's an usher do? Your Honor, I could provide you with a description from the DOT on the usher job. The usher job is someone who assists patrons at entertainment events to find seats. It sounds like something we would understand as ushering people to seats to find articles, to locate areas within a facility, really to help customers and patrons, as the DOT describes it. And that was one of the jobs, along with mail clerk, that the vocational expert provided with those further reaching limitations and some further manipulative limitations. And then the other two jobs being a sales attendant and an inspector. Fundamentally, this record, which was only 178 pages, as the ALJ described it, is precisely the kind of relevant evidence that a reasonable mind would find adequate to support the decision that the ALJ made here, which is that Mr. Prim does not satisfy the definition of disability under the Social Security Act. And it's for that reason that we are asking this court to affirm the ALJ's decision. And unless Your Honors have any more questions, we rest on our brief and our argument today. Thank you, Counsel. Thank you. May it please the Court. There are references to the workers' comp decision, and that reference is really just an improper inference. And that is specifically that, you know, Mr. Prim received a $300,000 settlement, and therefore, quote, it's reasonable that the claimant would not be motivated to seek work given the amount of compensation received. He made $50,000 a year, roughly. This wasn't $3 million. I mean, this is just a cheap shot at a veteran, basically. Mr. Prim is still not working today, and the job of usher is, you guys discussed the job task, but I don't even think it exists. I mean, there's no venue that operates 40 hours a week for someone to be an usher. You can't go to the United Center every night of the week and be an usher. It's not a year-round thing. It's not a full-time work. But that's beside the point. Just going back to, you know, the use of the right arm, Dr. Lopez treats the shoulder and the arm, and he sends them to Montella, his partner, to treat a cervical spine, and I know there's not a ton of notes, but he does say he's good to go back to work unless Montella says so. Montella does not say so. So the judge sort of picks one opinion without considering the other. And, you know, another thing that comes up with this right arm, clearly the judge is aware of it, is his wife fills out the function report at page 217. He cannot use his right arm. He tells everybody that. They all know that. The tests show that. The other improper inference I wanted to highlight here is that the judge makes a comment in the record at 17 that the claimant has not consistently received ongoing treatment, although he's testified he had insurance at all times. That's sort of irrelevant because when you have a worker's compensation injury, when you go to your doctor, the first question they ask is, how did you get injured? Oh, you got injured at work? Perfect. And the judge says, well, you know, your blue cross, whatever your private carrier is, isn't going to cover you when you got injured at work. He's just following the protocol that he was told to do by the worker's comp insurance carrier and his doctors. So unless you have any other questions, we ask that you reverse this decision. Thank you, counsel. Thank you. Thanks to both counsel in the case we've taken under advisement.